JOHN A. OWEN

*v.*

WILLIAM STEVENS.

1. STATUTE OF FRAUDS—*undertaking collateral to the promise of another, not in writing, void.* Where the owner of a building being erected said to a material-man, who had already furnished materials to the contractor who was building the house, that he would pay for all the materials that

the contractor might get for the building, it was *held*, that the owner was liable, on his promise, for all materials furnished thereafter for such building and charged to him, but that he was not liable for such as had, before the promise, been furnished to the contractor.

2. PRACTICE IN SUPREME COURT. This court can not act upon and give effect to an affidavit impeaching the correctness of a transcript filed herein, as against the certificate of the clerk.

3. SUPERIOR COURT OF COOK COUNTY—*what the record should show when a circuit judge presides.* Where a circuit judge holds the Superior Court, the record should show what judge presided, and that he did so by request of the judges of said court, as a branch court, in pursuance of the statute.

4. Where the record shows that there were three judges of the Superior Court present at the trial, and further shows that a circuit judge actually presided on the trial, it is contradictory and informal, and shows not such an organization of the court as litigants are entitled to have when their cases are tried.

APPEAL from the Superior Court of Cook county.

Mr. D. S. COOMBS, for the appellant.

Mr. F. W. S. BRAWLEY, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit, on the common counts only, brought to the Superior Court of Cook county, by William Stevens, plaintiff, against John A. Owen, defendant. The issue was non-assumpsit, and the trial by a jury, who found for the plaintiff, and assessed his damages at two hundred and fifty-seven dollars and twenty-seven cents, for which the court rendered judgment, having denied defendant's motion for a new trial.

To reverse this judgment the defendant appeals, and makes the point that the undertaking alleged and proved was collateral to the undertaking and promise of Fancher, and, not being in writing, has no binding force.

The facts are briefly these: Appellant had made a contract with E. J. Fancher to build him a house at Glencoe, the builder to furnish the materials. In order to do this, Fancher

made a contract with appellee, who was the proprietor of an.
establishment for the manufacture of the necessary materials,
to furnish the same.   He commenced doing so, and having
furnished an amount of the value of one hundred and fourteen
dollars and fifty cents, which Fancher did not pay, when
asked for money by appellee, he requested appellee to go with
him to appellant's office, where Fancher said to appellant:
"Mr. Stevens wants some money; he won't send any more
stuff until he knows how he is going to get his pay."   The
account was stated, at that time, to be one hundred and four-
teen dollars and fifty cents.   Appellant replied, he would see
appellee paid for all the stuff he put into that building, and,
turning to Fancher, said:   "Is that right, Mr. Fancher?" to
which Fancher replied:  "That is right; that is just the way
I want it."   Appellant then paid on the amount one hundred
dollars.   This was on the 29th of October, 1873.   Appellee
thereafter continued to furnish stuff for this building, charg-
ing them in account to E. J. Fancher, when, on December 4,
he presented another account to appellant, amounting to five
hundred and seventy-two dollars and fifty-five cents, with
this sum of one hundred dollars credited, leaving a balance
of four hundred and seventy-two dollars and fifty-five cents,
on which appellant paid fifty dollars.   There was also a de-
duction for defective materials returned, of one hundred and
sixty-five dollars and twenty-eight cents, leaving the balance,
for which the jury found the verdict.

It is very evident this balance, so found by the verdict, in-
cludes so much of the account first presented to appellant as
he did not pay.   The account was one hundred and fourteen
dollars and fifty cents; paid by appellant, one hundred dol-
lars thereon; leaves a balance of fourteen dollars and fifty cents.
By all the proof, this account was against Fancher, on his
promise and undertaking with appellee, with which appellant
had no connection.   The credit was given wholly to Fancher.
On his promise the stuff was delivered by appellee, and not
on appellant's promise.

The payment by appellant of one hundred dollars on this account was a favor to appellee, but did not bind him to pay the balance. He is bound alone, by the promise then made, to pay for all materials that should thereafter be put into the building by appellee, for such is the proof, as we understand it. Consequently, the verdict is too large by the sum of fourteen dollars and fifty cents.

But it is urged by appellee, that appellant promised to pay this sum. Suppose he did; it was a promise without any consideration, and collateral to Fancher's promise. Fancher was the debtor to appellee. For all materials furnished by appellee prior to October 29, Fancher was originally and primarily liable. In all subsequent, appellant is liable on his promise, made on that day, to pay for all the material that should go into the building.

There is some conflict in the evidence as to the nature of appellant's promise, but we think the weight of evidence establishes the view we have taken of it.

Complaint is made by appellant that the court refused to give this instruction on his behalf:

"The jury are instructed, that if they find, from the evidence, that a contract existed between the plaintiff, Stevens, and Fancher, to furnish the goods in question for Owen's house, that such contract did not bind defendant, Owen, to pay Stevens for them, unless the jury first find, from the evidence, that Owen subsequently assumed Fancher's contract, and promised Stevens to pay him for the same; and if the jury find such to be the case, the defendant can not be held liable to pay for any goods delivered before Owen made such agreement with Stevens, for the reason that there is no consideration for such agreement, and the jury should give Owen credit for all money paid by him, to be applied in payment for goods furnished subsequently to such agreement by Owen."

In the view we have of this case, as above expressed, this instruction was proper, and should have been given. Had it been given, the jury would not have found so large a verdict, by fourteen dollars and fifty cents, as they did find. And more especially in view of the instructions given for appellee, which, though not faulty in themselves, did not present the law as fully as the evidence required, and which the defendant's refused instruction supplied.

For the reasons we have given, the judgment must be reversed and the cause remanded. In doing so, we will dispose of other points made by appellant.

The first is as to the form of this record. It shows, on its face, there were three judges of the Superior Court present at this trial, and further shows that Judge Murphy, judge of the second judicial circuit, actually presided on the trial. We know of no authority for this. Our views on this subject are fully expressed in *Jones* v. *Albee*, 77 Ill. 34, and *Hall* v. *Hamilton*, Sept. T. 1874. It is of no importance to be informed of the names of the judges of the Superior Court, in a case neither of those judges tried. The *placita* should have read: Present, Theodore D. Murphy, judge of the second judicial circuit, presiding and holding this term of the court by request of the judges of the Superior Court, as a branch court, in pursuance of the statute in such case made and provided. The record, as made out, is contradictory, informal, and shows not such an organization of the court as litigants are entitled to have when their causes are tried.

Another point is made, that the record shows the cause was tried by eleven jurors only. That appears from the transcript of the record, filed under the rule of this court. By actual count but eleven names of jurors appear.

On appellee's motion in this court, suggesting a diminution of the record, he has filed an additional transcript, duly certified by the clerk, by which it appears twelve jurors, whose names are given, were present and tried the cause.

To this additional transcript appellant made objection, and

entered a motion to strike it from the files, on his affidavit, going to show an interlineation of the record of the name of a juror, without leave of the court, and without the knowledge of appellant.

The affidavit makes out a *prima facie* case, but we can not act on it and give it effect as against the certificate of the clerk. If the fact is, an interpolation has been made, as stated in the affidavit, appellant, being a member of the bar, should exert himself to bring the culprit to punishment. If done by the deputy clerk, as stated in the affidavit, he should be made an example of, and held up to the condemnation of the public.

But if there were but eleven jurors trying the cause, appellant knew it, and made no objection. He was present at the trial, was a witness in the case, is a practicing lawyer, and must be presumed to have assented to the irregularity. The verdict, under such circumstances, ought not to be disturbed.

For the reasons given, the judgment is reversed and the cause remanded.

*Judgment reversed.*